Blanche E. SHASTEEN, Appellee,

v.

Marian K. SOJKA d/b/a E Avenue
Tavern, Appellant.

No. 58519.

Supreme Court of Iowa.

Nov. 23, 1977.

Raymond R. Stefani and Frank S. Mitvalsky of Silliman, Gray & Stapleton, Cedar Rapids, for appellant.

R. Fred Dumbaugh, Cedar Rapids, for appellee.

Heard before MOORE, C. J., and RAWLINGS, REES, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

This was a dram shop action brought as a result of a three-car automobile accident. The jury returned a verdict for plaintiff in the amount of $28,000. The trial court allowed defendant a pro tanto credit of $6000 because of plaintiff's earlier recovery against the driver involved in the accident. Both parties appeal. We affirm the trial court.

On the afternoon of May 26, 1973 Louis Leroy Sanders (Sanders) consumed a quantity of beer in the E Avenue Tavern, located in northwest Cedar Rapids. The tavern was owned and operated by Marian K. Sojka (defendant). From the jury verdict we take it as established that Sanders drank beer in the tavern to the point of becoming intoxicated. Thereafter Sanders left the tavern, got into his car, and within ten minutes became involved in a three-car collision. Other cars involved were one driven by Ronald Cox and another driven by Mr. Hawkins. Blanche Shasteen (plaintiff) was a passenger in the Hawkins automobile. Cox, the driver of the second automobile, and his wife also brought suit. Their suit is the subject of a separate appeal.

Plaintiff suffered a ruptured spleen which was later removed surgically. She was dismissed from the hospital June 3, 1973. Thereafter she suffered from a pleural effusion condition in her left lung which her doctors attributed to the accident. Plaintiff was rehospitalized from June 6 to June 12. Her medical bills amounted to $1584.45. Her resulting loss of earnings was $1152.

On August 6, 1973 plaintiff and her husband brought suit against Sanders. They were represented by the same counsel who represents plaintiff in this suit. The suit against Sanders was settled out of court and resulted in a net recovery by plaintiff of $6000.

The accident was the subject of an investigation by Sgt. William Mau, a deputy sheriff of the Linn County sheriff's office. In the investigation Mau determined Sanders was intoxicated and had been drinking beer at the E Avenue Tavern shortly before the accident. However Mau was never asked for information about Sanders' drinking by Shasteen nor by anyone representing her. Sanders was charged with operating a motor vehicle while under the influence of an intoxicating beverage in violation of § 321.281, The Code.

Neither plaintiff nor her attorney ever inquired of Sanders' counsel, of the county attorney, or the clerk of court if a true information with attached minutes of testimony had been filed in the OMVUI case. Plaintiff and her attorney did know from a newspaper account that Sanders had been charged. Plaintiff's attorney visited with the county attorney's office in an attempt to look over material in the county attorney's file but was not allowed to do so.

It was not until February 28, 1974, through another attorney retained to represent Cox, that plaintiff's attorney finally learned Sanders had been drinking at defendant's tavern prior to the accident. On March 1, 1974 plaintiff's attorney prepared a written notice of intention to bring a dram shop suit and sent it by certified mail to defendant. Defendant acknowledged receipt of this notice March 7, 1974, more than nine months after the accident.

I. Three of defendant's five assignments of error relate to the requirements of § 123.93, The Code. That section provides:

"Within six months of the occurrence of an injury, the injured person shall give written notice to the licensee or permittee or such licensee's or permittee's insurance carrier of his intention to bring an action under this section, indicating the time, place and circumstances causing the injury. Such six months' period shall be extended if the injured party is incapacitated at the expiration thereof or unable, through reasonable diligence, to discover the name of the licensee, permittee, or person causing the injury or until such time as such incapacity is removed or such person has had a reasonable time to discover the name of the licensee, permittee or person causing the injury."

More than six months passed between the date of the accident and any attempted compliance with the notice requirements of § 123.93. Defendant contends alternatively: (1) the trial court erred in failing to determine as a matter of law plaintiff did not comply with the notice requirements and hence had no standing to bring suit, (2) plaintiff was not entitled to any extension of the six months' period under the statute because within 30 days after the accident she knew the name of the "person causing the injury", and (3) plaintiff did not exercise reasonable diligence to discover defendant's name and is therefore not entitled to any extension of the six month period. These interrelated claims will be considered together in this division.

The trial court determined a factual issue existed on the matters plaintiff urges in justification for noncompliance. Two special interrogatories were submitted to the jury and the jury's answers to the interrogatories were returned with their verdict as follows:

"Do you find by a preponderance of the evidence that prior to the expiration of the six month period, that Plaintiff personally or through counsel, should have undertaken steps to discover if Louis Sanders had been drinking in a tavern on the day of May 26, 1973, prior to the accident on said date?

YES _____    NO __X__

"Do you find by a preponderance of the evidence that Plaintiff, personally or through counsel, was unable, through reasonable diligence to discover the name of the Defendant licensee until February 28, 1974?

YES __X__    NO _____

The notice requirements of § 123.93 are of relatively recent origin. Prior to the effective date of our current law, January 1, 1972, dram shop recoveries were authorized by two separate and somewhat conflicting statutes. See § 123.95, The Code, 1971, and § 129.2, The Code, 1971. Common law dram shop rights were explained in *Lewis v. State*, 256 N.W.2d 181, 189–192 (Iowa 1977). We have often noted dram shop statutes should be liberally construed in order to further their purpose of discouraging serving excessive liquor to patrons. *Rigby v. Eastman*, 217 N.W.2d 604, 608 (Iowa 1974). Of course the whole purpose of dram shop acts is to provide for recovery in spite of the obvious difficulty with the traditional requirement of proving proximate cause as an element for tort recovery.

" * * * The original intent of the dram shop act was to overcome the common law requirement of proximate cause, although, to date, it is still a necessary element of proof in some cases. Were it not for the dram shop act, the Iowa supreme court has stated, the proximate cause between the sale of the beverage and the injury caused by the intoxicated person would be too remote. The dram shop act is intended, then, to impose strict liability upon the tavern operator, without regard to his negligence.

" * * *

"Dram shop acts, in general, are best exemplified by [an] Illinois' statute which allows recovery against a tavern licensee who causes the intoxication; by the Iowa statute under which the tavern operator, or his agent, must give or sell an intoxicant to a person while he is intoxicated, or serve the person to a point where he becomes intoxicated; and the Minnesota and New York acts which impose liability for the illegal or unlawful selling which causes or

contributes to the intoxication." Shubert, The Iowa Dram Shop Act—Causes of Action and Defenses, 23 Drake L.Rev. 16 (1973). See also 45 Am.Jur.2d, Intoxicating Liquor, § 561, p. 859; 48 C.J.S. Intoxicating Liquor § 430, pp. 716–717.

Under the revision in which our current dram shop law became effective a notice requirement was enacted for the first time. Defendant's first contention under this assignment is that we should declare that serving a § 123.93 notice within six months is a condition precedent for bringing a dram shop suit. Defendant relies heavily on *Stevenson v. Edwards,* 25 Conn.Supp. 1, 195 A.2d 252 (1963). *Stevenson* does hold such a statutory notice is a condition precedent for suit. But the case is scant authority upon which to hold the giving of a § 123.93 notice *within six months* is always a condition precedent to suit. *Stevenson* interprets the Connecticut statute which allows " * * * up to an aggregate amount of $50,000, to be recovered in an action under this section, *provided the aggrieved person or persons shall give written notice to such seller [of intoxicants] within sixty days of the occurrence of such injury of his or their intention to bring an action under this section.* * * *."

The Connecticut statute, unlike our own, provided for no extension of the notice. Iowa's original bill, House File 172, § 93, was later amended and enacted as Acts of the 64th G.A., 1971, ch. 131, § 93. It became § 123.93. The original bill contained no provision for extending the time for serving notice. It provided simply "the injured person shall give written notice to the licensee or permittee within one hundred twenty days of the occurrence of the injury of his intention to bring an action under this section." The changes adopted by the General Assembly were significant. It is apparent the legislature did not intend an automatic bar to suit in all cases in which the notice cannot be given within six months. Had the legislature so intended it easily could have fixed the notice requirements for any desired period and omitted the provision for extension.

We reject defendant's contention that, as a condition precedent for bringing suit, the plaintiff must *within six months* comply with the notice requirements of § 123.93. It is obvious the legislature intended the notice as a requirement for suit. But it is equally obvious the legislature intended for a certain amount of flexibility in the six-month time requirement for the notice.

The question then becomes whether plaintiff brought herself within the extension provisions of the second sentence of § 123.93:

" * * * Such six months' period shall be extended if the injured party is incapacitated at the expiration thereof or unable, through reasonable diligence, to discover the name of the licensee, permittee, or person causing the injury or until such time as such incapacity is removed or such person has had a reasonable time to discover the name of the licensee, permittee or person causing the injury."

Defendant argues plaintiff is precluded from any extension because within 30 days after the accident she knew the name of Sanders, "the person causing the injury." However we believe defendant misapprehends the extension provisions of the notice section.

The legislature, in the sentence last quoted above, gave three alternative grounds for an extension of the six month period: (1) incapacity of the prospective dram shop suit plaintiff, (2) inability, through reasonable diligence, to find out who is the prospective dram shop defendant, and (3) inability, through reasonable diligence, to find out who is the person causing the injury.

The sentence goes on to set the limits of any extension for any of the three grounds. An extension for incapacity terminates when the incapacity is removed. An extension by reason of inability to learn of the prospective dram shop defendant terminates when the prospective plaintiff has had a reasonable time to discover the dram shop operator. Similarly an extension by reason of the inability to learn the name of

the person causing the injury terminates when the prospective plaintiff has had a reasonable time to discover the name of the person causing the injury.

■ The three grounds for extension of the six month period are alternative. The termination of any ground for extension would not affect an extension for either of the other two grounds. The flaw in defendant's argument is that it seeks to intermix the various grounds for extension.

■ We hold plaintiff is not precluded from claiming an extension. Her inability to learn the name of the dram shop defendant was not affected by her knowledge of the name of the person causing the injury.

■ The question of plaintiff's compliance with the notice requirements of § 123.-93 was properly submitted to the jury. It would have been error under this record to find noncompliance as a matter of law. "Even where the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered." Rule 14(f)(17), Rules of Appellate Procedure.

Here reasonable minds could differ on the crucial question of reasonable diligence. There is evidence strongly indicating a lack of diligence. But there is also evidence from which the jury might find diligence.

There was nothing in the circumstances surrounding the accident itself to indicate Sanders had been drinking in a tavern. Plaintiff quite properly and understandably relied upon her attorney who wrote a letter to Sanders suggesting he contact his own attorney. Plaintiff's attorney also inquired of the attorney who appeared to defend Sanders in the criminal prosecution but was unable to learn anything. Plaintiff's counsel also inquired of the Linn County attorney's office for the same purpose but again learned nothing. He was denied access to the records in the county attorney's office. Plaintiff's counsel thereafter obtained a copy of the accident report of the Iowa department of public safety prepared by Sgt. Mau. This report contained no indication that Sanders had been drinking in a tavern.

Defendant's contention that plaintiff's suit is barred as a matter of law is without merit.

II. In her cross-appeal plaintiff challenges a trial court ruling which allowed a $6000 pro tanto credit on plaintiff's $28,000 recovery in this action. Plaintiff realized a $6000 recovery in settling the separate action brought against Sanders.

Plaintiff points to § 123.94, The Code, which provides: "No right of action for contribution or indemnity shall accrue to any insurer, guarantor or indemnitor of any intoxicated person for any act of such intoxicated person against any licensee or permittee as defined in this chapter."

We considered § 123.94 and held it constitutional in *Dairyland Insurance Company v. Mumert,* 212 N.W.2d 436, 441 (Iowa 1973). Plaintiff rightly maintains § 123.94 overrules the common law right of contribution recognized in *Federated Mutual Imp. & H. Ins. Co. v. Dunkelberger,* 172 N.W.2d 137, 143 (Iowa 1969). Plaintiff believes § 123.94 sets up a public policy which is violated by the pro tanto credit she challenges in this assignment.

■ However we believe the trial court was right in directing the pro tanto credit, not because of any theory of indemnity or contribution, but by reason of the proscription against double recovery. See *Farmers Insurance Exchange v. Village of Hewitt,* 274 Minn. 246, 143 N.W.2d 230, 235 (1966), a case we cited with apparent approval in *Wendelin v. Russell,* 259 Iowa 1152, 147 N.W.2d 188 (1966). In *Wendelin* we strongly hinted the propriety of the pro tanto credit as follows: "But even if the supplier and the intoxicated person were to be held jointly liable to a third party, the result might then be a pro tanto reduction of recovery against one by the amount of recovery against the other, an adjustment by contribution or other appropriate relief. (Authorities)." *Wendelin,* supra, 259 Iowa at 1160, 147 N.W.2d at 193. The fact the legislature has chosen to prohibit actions for contribution or indemnity under § 123.-

94 does not entitle plaintiff to double recovery. The trial court was right in so holding.

AFFIRMED.